IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO: 3:06-CV-303-GCM-DCK

| | |
|---|---|
| BONNIE BLOUNT,<br>    Plaintiff | )<br>)<br>) |
| vs. | )   **MEMORANDUM AND**<br>)   **RECOMMENDATION**<br>) |
| JO ANNE BARNHART,<br>**Commissioner of Social Security,**<br>    Defendant. | )<br>)<br>)<br>) |

**THIS MATTER IS BEFORE THE COURT** upon the "Plaintiff's Motion for Summary Judgment" (Document No. 14) and the Defendant Commissioner's "Motion for Summary Judgment" (Doc. No. 18). Plaintiff Bonnie Blount, through counsel, seeks judicial review of an unfavorable administrative decision on her application for a period of disability and Social Security disability benefits ("DIB"). After careful consideration of the briefs, the administrative record, and the applicable authority, the undersigned recommends that the Commissioner's decision be **affirmed**, based upon the following proposed findings of fact and conclusions of law:

## I. BACKGROUND

Plaintiff was born March 9, 1956, has a tenth-grade education, is literate, and has past relevant work experience as an administrative assistant, secretary, and office coordinator. (AR 48, 174, 180, 770). Her past job duties included preparing payroll, doing taxes, using a computer, posting accounts, making bank deposits, scheduling appointments, answering phones, and other clerical work. (AR 48, 180, 207-208). She was married and has several grown children. (AR 160). With respect to her daily activities, she indicates that she is able to take care of her own personal

needs, drive her car, attend church, shoot pool, play cards, vacuum, watch soap operas on television for 3-4 hours daily, make the bed, and do light laundry. (AR 53-54, 69, 73, 194-195, 215, 221, 226, 763).

Plaintiff stopped working in 1999 and filed for disability, due to alleged pain from fibromyalgia and a lumbar strain incurred when she bent over a file cabinet to look for a folder.[1] (AR 21, 108); (Document No. 15, p. 5). She alleged constant pain from her neck down. (*Id.*) The ALJ noted "she added that she fell last year and injured her head ... with headaches and dizziness since her fall." (AR 108).[2] Administrative Law Judge Robert Egan found that Plaintiff's lumbar strain was a "severe" impairment. He also found that although she complained of headaches and dizziness, "no underlying medical conditions have been documented which are causing those symptoms." (AR 109-110, noting normal CT scan and normal brain MRI, taken by two different physicians in April and May of 2000). On August 9, 2001, the ALJ found Plaintiff was not disabled through the date of decision and denied the claim. (AR 107-113). Plaintiff did not appeal.

On March 14, 2002, Plaintiff filed her next application for disability benefits and a period of disability beginning August 10, 2001, alleging chronic pain, headaches, dizzy spells, fatigue, memory problems, and back problems. (AR 135, 179). Prior to filing this application, she went to a mental health center on August 7, 2001, and described symptoms of depression, although the medical notes indicate she was articulate, pleasant, and cooperative, with no evidence of mood

---

[1]Web M.D. defines fibromyalgia as "a common syndrome of chronic widespread soft-tissue pain accompanied by weakness, fatigue, and sleep disturbances." The soft-tissue pain is referred to as "myofascial" pain.

[2]Plaintiff indicates that she fell in April of 2000 and suffered a concussion. (Document No. 15, p. 4).

disorder. (AR 122). In October of 2002, she began attending counseling through Medicaid. Although she attended sixteen (16) sessions through January 2004, no medications were prescribed, and the therapist conservatively recommended that Plaintiff keep a journal and try to be more positive.

The Social Security Administration denied the claim initially and upon reconsideration. (AR 114-16). Administrative Law Judge D. Randall Frye ("ALJ") held a hearing, at which counsel initially drew attention to Plaintiff's allegations of "pain," as well as "cognitive problems subsequent to a head injury and the depression." (AR 204). On June 8, 2004, the ALJ found that Plaintiff had "severe impairments" of myofascial (soft-tissue) pain and depression, but was not disabled through the date of decision.[3] (AR 125-126). The ALJ's decision noted that Plaintiff had been in a vehicle collision in October 2003, but that subsequent physical medical studies were within normal limits. (AR 27, 122). The Appeals Council denied review, and Plaintiff sought judicial review.

Upon motion by the Commissioner, and with Plaintiff's consent, this Court remanded pursuant to sentence four for consideration of "the severity of Plaintiff's mental impairment" and that "[i]f the ALJ finds that Plaintiff's impairment is severe, the ALJ will include corresponding limitations in the residual functional capacity finding." (Case No. 3:05-CV-149-DCK, Order of July 27, 2005). The Order indicated that the ALJ should consider a consultive state agency mental evaluation in the record.

Pursuant to the remand, the ALJ held an additional administrative hearing on November 21,

---

[3]Plaintiff last met the insured status requirement on December 31, 2004. Her alleged medical conditions must have become disabling prior to that date. *See Viverette v. Astrue*, 2008 WL 5087419, *2-3 (W.D.N.C. 2008); *Fulbright v. Apfel*, 114 F.Supp.2d 465, 475 (W.D.N.C. 2000) (citing *Harrah v. Richardson*, 446 F.2d 1, 2 (4th Cir. 1971)). The ALJ correctly notes that the relevant period under consideration is August 10, 2001 to December 31, 2004. (AR 28).

2005, at which a vocational expert testified. Plaintiff was represented by counsel. Plaintiff testified that she suffered from chronic pain and very briefly stated she felt depressed. (AR 51, 91). On February 14, 2006, the ALJ issued a new decision finding that Plaintiff had "severe" impairments due to myofascial (soft-tissue) pain and depression, but was not disabled at any time through the date of decision. (AR 20-33). On June 22, 2006, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (AR 7-12). Plaintiff seeks judicial review.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, *Richard v. Perales*, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. *Hays v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The Fourth Circuit defines "substantial evidence" as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Smith v. Heckler*, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting *Perales*, 402 U.S. at 401).

It is not for a reviewing court to re-weigh the evidence or substitute its judgment for that of the Commissioner – so long as that decision is supported by substantial evidence. *Hays*, 907 F.2d at 1456; *Seacrist v. Weinberger*, 538 F.2d 1054, 1056-57 (4th Cir. 1976). If the Commissioner's decision is supported by substantial evidence, it must be affirmed. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982).

## III. THE ALJ'S DECISION

Under the Social Security Act, the term "disability" is defined as the "inability to engage in

any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months...," taking into account the individual's age, education, and past work experience. 42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process for determining whether an individual is disabled. 20 C.F.R. §§ 404.1520, 416.920 (2009). At step one, the ALJ found that Plaintiff had not performed any gainful activity since her alleged onset date. (AR 32, Finding 3). At step two, the ALJ found that Plaintiff's myofascial pain syndrome and depression were "severe impairments" within the meaning of the regulations. (AR 32, Finding 4). At step three, the ALJ found that "the claimant has not established an impairment, or combination of impairments, which meets or is medically equal to any of the Listing of Impairments in Appendix 1, Subpart P of Social Security Regulation No. 4." (Tr. 29).

At step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC"), which is "what an individual can still do despite his or her limitations." 20 C.F.R. §§ 404.1520(e)-(g), 416.920(e)-(g). RFC represents an individual's maximum remaining ability to do sustained work activities on a "regular and continuing basis," defined as eights hours per day, five days per week. Social Security Ruling 96-8p at 2. The ALJ found that Plaintiff had the RFC to perform sedentary and light work involving simple, routine, repetitive tasks in a low stress environment, with no more than occasional exposure to the public. (AR 32, Finding 6).

The ALJ found that the Plaintiff had a history of skilled work with laterally transferable skills, but that due to her mental impairment, she was unable to perform the mental requirements of her past relevant work. (AR 32, Findings 7-8). The ALJ indicated that "due to memory loss, the

[Plaintiff's] activities of daily living are mildly restricted; that she has mild difficulty in maintaining social functioning; that she experiences mild deficiencies of concentration, persistence or pace; and that she has reported no episodes of decompensation during the relevant period." (AR 29).

At step five, the ALJ considered the testimony of the vocational expert ("VE"), Ms. Kathryn Mooney, that the Plaintiff within her restrictions could perform jobs that existed in significant numbers in the local and national economy. (AR 32, Finding 10). The ALJ considered the expert testimony, and Plaintiff's age, education, work experience, and RFC, and concluded that the Plaintiff was not disabled within the meaning of the Social Security regulations. (AR 32, Finding 11).

## IV. ANALYSIS

Plaintiff argues that the ALJ "improperly evaluated the Plaintiff's reduced mental functioning when he found that the impairment was not severe." (Document No. 14, p. 1). Plaintiff's counsel has confused several descriptive terms and is improperly mixing sequential steps two and four. Here, the ALJ generously construed the Plaintiff's testimony and the medical evidence and found that Plaintiff's depression *was* a "severe" mental impairment for purposes of the regulations. (See AR 32, Finding 4; AR 768-772, treatment notes from Piedmont Behavioral Healthcare on October 11, 2002, indicating that Plaintiff "would benefit from individual and/or group therapy to learn cognitive skills to combat depression," noting that Plaintiff reported memory problems, and indicating all other observed categories of problems were either "not present" or only "slight/occasional"). Specifically, the ALJ found that "the claimant has established that her myofascial pain syndrome and depression are 'severe' medically determinable impairments within the meaning of 20 C.F.R. § 1416.921." (AR 29, 32). Any resulting functional limitations are not the impairment itself, but rather, follow from the underlying mental impairment.

In the decision after remand, the ALJ appropriately explained why the report of one consulting examiner (and his odd reference to "mild mental retardation") was given little weight. (AR 26, 700). The ALJ indicated that this report, based on a one-time exam, was inconsistent with other substantial evidence, including the mental health notes from Plaintiff's own treating mental health professional, indicating that Plaintiff was "pleasant, alert, cooperative, and articulate, with no evidence of mood disorder other than concern about her undetermined medical conditions." (AR 26, 767). The ALJ points out that the Plaintiff underwent a comprehensive mental status evaluation over a year after the alleged head injury. (AR 26). That evaluation did not reflect any "retardation." By definition, "mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Pt.404, Subpt. P, App. 1, 12.05. In light of Plaintiff's history of skilled office work and other substantial evidence of record, the ALJ appropriately did not give this particular exam controlling weight and did not find any severe impairment due to "mental retardation."

Plaintiff inaccurately asserts that no medical provider has questioned the validity of this one-time exam. The ALJ found the exam inconsistent with other substantial evidence. For instance, Plaintiff's comprehensive mental status evaluation over a year after the alleged head injury did not reflect any finding of mental retardation, thus contradicting the validity of the one-time exam. (AR 26). In addition, consulting psychological examiner Dr. Robert Johnson noted possible malingering and questioned the validity of the earlier consulting exam because Plaintiff had spoken "in short phrases deliberately," in contrast to her interview with the examiner on April 3, 2002 and the hearing on April 19, 2001, at which she had no trouble providing her history and testifying. (AR 269, 279)

He observed that "no underlying medical conditions have been documented" that might cause the alleged problems and expressly indicated that Plaintiff's "behaviors make the validity of the CE [psychiatric consulting exam] questionable." (AR 279).

Although Plaintiff disagrees with the weight assigned to certain inconsistent evidence, it is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in the evidence. *Hays*, 907 F.2d at 1456; *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979); *Seacrist v. Weinberger*, 538 F.2d 1054, 1056-57 (4th Cir. 1976) (observing that "it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistences in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion."). Substantial evidence supports his decision.

To the extent Plaintiff urges that her alleged memory deficits were due to "brain injury" from a concussion in 2000, the ALJ found in the 2001 decision that the objective medical evidence of record did not establish any severe impairment on this basis, much less one that would meet Listing 12.02. (AR 109-110).[4] That decision is not subject to review here. Moreover, medical records subsequent to that decision support the ALJ's current decision (finding severe impairments only with respect to soft-tissue pain and depression). For instance, Dr. Robert Mills of Union Regional Medical Center indicated that an MRI brain scan of Plaintiff on October 15, 2001 was normal. (AR 339). Consultant Dr. David Buchin, M.D. further indicated on April 23, 2002 that "extensive workup including multiple MRI's of the brain...have not shown any abnormalities." (AR 287).

The regulations provide that a claimant's "statements about ... symptoms ... will not alone

---

[4] As the ALJ noted, the medical records reflect that Dr. K.B. Hendrix, M.D, of the Union Regional Medical Center, indicated the MRI of Plaintiff's head on December 22, 2000, showed normal results. (AR 312). The treatment notes from First Care Medical Clinic on January 12, 2001 indicated that Plaintiff had undergone "extensive" tests, including a CT scan and MRIs, with "all normal" results. (AR321).

establish ... disabil[ity]; there must be medical signs and laboratory findings which show ... medical impairment(s) which could reasonably be expected to produce the symptoms ... alleged ..." 20 C.F.R. § 404.1529(a); *and see, e.g., Parris v. Heckler*, 733 F.2d 324, 327 (4th Cir.1984) (observing that subjective evidence does not take precedence over objective medical evidence); *Viverette v. Astrue*, 2008 WL 5087419 (E.D.N.C. 2008). "Under the regulations, an individual's statement(s) about his or her symptoms is not enough in itself to establish the existence of a physical or mental impairment or that the individual is disabled." S.S.R. 96-7p.

Moreover, the ALJ appropriately found that the Plaintiff's allegations regarding her impairments and resulting functional limitations were *not* credible. (AR 32, Finding 5). He explained:

> The level of [Plaintiff's] alleged memory loss is contradicted by other evidence of record; I note that she was astute enough to request corrections to certain dates in Dr. Boatright's treatment notations, yet she testified that she cannot remember anything she reads . . . Regarding the claimant's alleged mental impairments, I note that she stressed her poor memory as a basis for disability at the first hearing. At the second hearing, she stressed chronic pain as a basis for disability.....It is clear to the undersigned [ALJ] that the record as a whole is totally inconsistent with the IQ results obtained at the psychological consultative evaluation of a full scale IQ of 58 which is indicative of mental retardation. The claimant has a good memory for details and is articulate when it serves her purpose of obtaining disability. (Tr. 28, 30).

It is the duty of the ALJ to make credibility determinations, a task which should not be undertaken by the reviewing court. See *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citing *Hays*, 907 F.2d at 1456). *Mickles v. Shalala*, 29 F.3d 918, 929 (4th Cir.1994). As long as the court finds substantial evidence supporting the ALJ's credibility determination and that determination was made through application of the correct legal standard, the reviewing court must affirm. 42 U.S.C. § 405(g).

In accordance with the remand order, the ALJ's most recent decision expressly considered

the Plaintiff's mental impairment, the consultive state agency mental evaluation, and any corresponding limitations in Plaintiff's RFC. The ALJ provided specific references to evidence of record to support these conclusions. The ALJ's decision is well supported by substantial evidence.

## V. CONCLUSION

**IT IS, THEREFORE, RECOMMENDED** that the Plaintiff's "Motion for Summary Judgment" (Doc. No. 14) should be **DENIED**; the Defendant's "Motion for Summary Judgment" (Doc. No. 18) should be **GRANTED**; and the Commissioner's decision should be **AFFIRMED**.

## VI. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. § 636(b)(1)(c), written objections to the proposed findings of fact and conclusions law and the recommendations contained in this memorandum must be filed within ten (10) days after service of same. *Snyder v. Ridenour*, 889 F.2d 1363, 1365 (4th Cir.1989); *United States v. Rice*, 741 F.Supp. 101, 102 (W.D.N.C.1990). Failure to file objections to this memorandum with the District Court constitutes a waiver of the right to *de novo* review by the District Court, *Snyder*, 889 F.2d at 1365, and may preclude the parties from raising such objections on appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841, 845-46 (4th Cir.1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir.1984).

Signed: September 1, 2009

David C. Keesler
United States Magistrate Judge